# Mütter's Estate.

*Construction of Repugnant Clauses in a Will.—Legacies, Vested and Contingent.*

1. The rule which sacrifices the former of several contradictory clauses in a testament, is never applied but on the failure of every attempt to give the whole will such a construction as renders every part of it effective; the will is to be construed as a whole, and one part is not to be treated as repugnant to another, if it be possible for both to stand.

2. In the attainment of this object, the local order of the limitations is to be disregarded, if it be possible by transposing them to deduce a consistent disposition from the entire will.

3. A testator, in the first testamentary disposition of his estate, gave to his wife, with the exception of one bequest, all he possessed of every description, and afterwards settled another disposition of it, in the contingency that he should survive his wife, by which he gave her the use of her estate *for life*, and *in fee* to will at her death, subject to the payment of four certain legacies at her death. *Held*, that she took a fee in the whole estate, subject to the payment of the legacies at her death, the interest of which was adjudged to her for life; and, that the legacies were vested in the legatees living at the death of the testator.

Appeal from the Orphans' Court of *Philadelphia*.

This was an appeal by Mrs. Mary W. A. Mütter, from the decree of the Orphans' Court, confirming the report of the auditor appointed to audit her account as executrix of Thomas D. Mütter, deceased, under whose will she claimed as legatee.

Thomas D. Mütter died in 1859, leaving a will dated June 15th 1858, which was duly proved April 14th 1859, and in and by which his widow Mary W. A. Mütter was appointed executrix.

The following is a copy of the will:—

Paris, June 14th 1858.

In consequence of certain losses which I have experienced, I find it necessary to make a new will, and I hereby declare that this will revokes and destroys all others heretofore made by me, and that they are null and void.

1st. I desire the arrangements entered upon, but never completed, with the College of Physicians, of Philadelphia, Pennsylvania, United States of America, to be carried out according to the agreement drawn up by the committee of said college—which agreement is in possession of Dr. George B. Wood, of Philadelphia. I leave to carry out my views a certain ground-rent on Green Hill Property, for twenty thousand dollars, and the sum of ten thousand dollars in money. I especially order that these funds shall be held in trust for the benefit of my museum, and of the objects connected with it, by the insurance company which has its office in the house formerly occupied by Mr. Watts, and of which company the late Professor John K. Mitchell was for some time a director. I forget the exact name of said insurance company.

2d. I give and bequeath all my property of every description, and everything which I possess, or to which I may have any claim, to my beloved wife, Mary W. Alsop Mütter, with the sole exception of the above-named bequest to the College of Physicians of Philadelphia.

This of course revokes the legacies to be found in my will, drawn up in New York, just before my departure for Europe, and bearing date, I think, the 30th of September 1856.

Should the College of Physicians of Philadelphia decline carrying out the arrangements entered into, but not completed, at the time of my departure for Europe, October 1st 1856, according to the agreement before mentioned, which is in the hands of Dr. Wood, then I wish my museum and the above-named fund, amounting to the sum of thirty thousand dollars, to be offered to the New York "Academy of Medicine," with the same stipulations as those upon which it was offered to the College of Physicians of Philadelphia.

Should the New York Academy of Medicine also decline my propositions, then my museum shall be given to my nephew and god-son, Joseph Alsop, Jr., son of Joseph W. and Mary Alsop, of New York, and the fund of twenty thousand dollars in ground-rent on Green Hill property and ten thousand dollars in money, shall be divided between the children of Charles R. Alsop, of Middletown, Conn., of Elizabeth W. Hoppin, of Providence, R. I., and John Armistead Carter, of Virginia, and Thomas Mütter Blount, Jr., M. D.; an equal portion to be given to each individual included in the above bequest.

But if my wife, Mary W. Alsop Mütter, be living at the time

of my death, the said fund, amounting to thirty thousand dollars, must be given to her. The above legacies, therefore, only are to be paid in case of the death of my wife.

Should further losses reduce my estate to a value less than the sum of ninety thousand dollars, clear of all encumbrance and doubt, I give and bequeath my entire property and estate, without restriction, to my beloved wife, Mary W. Alsop Mütter. At her death, I give the before-named fund, amounting in value to thirty thousand dollars, to the College of Physicians of Philadelphia, upon the conditions before named, as stated in the paper now in the hands of Dr. George B. Wood; and in case of the refusal of said College of Physicians of Philadelphia, it is to be appropriated as before stated, viz.: to be offered to the New York "Academy of Medicine" upon the same terms, and if refused by that institution, to be equally divided among the individuals specified on page third and fourth, (3d and 4th).

In the event of my surviving my beloved wife, I wish my estate and property to be divided and appropriated as follows:—

I give and bequeath the sum of $20,000 (twenty thousand dollars) for the founding of a "Ward for Incurables" in, or in connection with the Church Hospital—Protestant Episcopal Hospital of Philadelphia.

I give and bequeath the sum of five thousand dollars to each of the three daughters of Charles R. Alsop, of Middletown, Conn., namely: to Lucy C. Alsop, Catherine B. Leffingwohl, and Annie E. A. Alsop, to be safely invested and settled upon each, and the income to be paid only to themselves or to their order.

I give and bequeath to Thomas Mütter Cleeman the sum of five thousand dollars, to Thomas Mütter Hoff the sum of five thousand dollars, to John Armistead Carter the sum of ten thousand dollars ($10,000), to Mary L. Eliason, sister of John Armistead Carter, the sum of ten thousand dollars ($10,000). To Clara B. Alsop, I give and bequeath the sum of five thousand dollars.

I wish a handsome gold watch and chain to be given to each of the following children, they being my god-children, viz.: Henry Chauncey, son of Henry Chauncey, Jr., of New York; Spencer, son of Henry Cramm and Catherine Sergeant Cramm, of New York; Louis, son of Henry Beylard, Esq., of Philadelphia.

I wish a handsome diamond ring given to each of the following named individuals, as a token of my affectionate remembrance, viz.: to Ellen Chauncey, Kate Brown, Clara C. Smith, and her sister Eleonora Cleeman, Julia Galliard, Mary, the eldest daughter of Rebecca Dulany, of Virginia; Mary Macintyre, daughter of Mrs. Mary L. Eliason, of Virginia.

I give and bequeath the sum of two hundred dollars to each

of the following named persons, my nephews, for the purchase of some memorial of my affectionate regard, viz.: Joseph Alsop, Jr., and Frederick A. Chauncey, of New York, to each of the sons of Charles R. Alsop and to each of the sons of Elizabeth W. Hoppin.

I give and bequeath the sum of five thousand dollars to Dr. S. Wier Mitchell, of Philadelphia, the son of my beloved and lamented friend, Dr. John K. Mitchell.

I also give my medical library to Dr. S. Wier Mitchell. I give my surgical instruments to Dr. W. Pancoast, son of my much esteemed friend, Prof. Joseph Pancoast.

I appoint Thomas Mütter Blount, Jr., M. D., my residuary legatee.

I wish to state distinctly that the above-named legacies only hold good in case of my surviving my beloved wife, to whom I give the entire use of my estate and property during her life, [∧and in fee to will] at her death. [∧But] I wish the four following legacies to be paid [∧at her death], viz.: ten thousand dollars to John Armistead Carter, or in case of his death, to his son Welby; ten thousand to Mrs. Mary L. Eliason, or in case of her death, to her daughter, Mary, to be settled upon herself; five thousand dollars to Thomas Mütter Cleeman, or in case of his death, to be divided between his two sisters; five thousand dollars to Thomas Mütter Hoff, and in case of his death, to revert to his mother.

I hereby appoint my beloved wife, Mary W. A. Mütter, executrix, and my brothers-in-law, Henry Chauncey and Joseph W. Alsop of New York, executors of this, my last will and testament.

In witness whereof, I the said Thomas D. Mütter have hereunto set my hand and seal this fifteenth day of June, one thousand eight hundred and fifty-eight.

The balance in the hands of the accountant for distribution, after deducting all expenses, was $85,663.15, in disposing of which two points were made before the auditor, viz.:

1. Whether testator intended to bequeath the sums of money named in his will to John Armistead Carter and others, so as to make them legacies taking effect under the will.

2. What was the quantity of interest which Mrs. Mütter took under the will.

The auditor decided that John Armistead Carter, Mrs. Mary L. Eliason, Thomas Mütter Cleeman, and Thomas Mütter Hoff were entitled to take under the will of deceased the sums respectively bequeathed to them payable after the death of Mrs. Mütter, and that she was entitled to the enjoyment of the whole property

during her life.   He accordingly awarded to Mrs. Mütter the whole of the balance in hand, to be held by her for her own use during her life, and, subject to her life estate therein, awarded to John Armistead Carter $10,000, to Mrs. Mary L. Eliason $10,000, to Thomas Mütter Cleeman $5000, and to Thomas Mütter Hoff $5000, over which sums he reported that Mrs. Mütter had no power of testamentary appointment.

As to the balance of the estate, he reported that Mrs. Mütter had only a life estate therein, with a power of disposing by last will and testament of the remainder after her life estate.

Exceptions to this report were filed on behalf of Mrs. Mütter, but the Orphans' Court on argument confirmed the report.   The case was then removed into this court by appeal, where the following assignments of error were presented:—

1. The court erred in confirming the report of the auditor awarding to John Armistead Carter $10,000, to Mrs. Mary L. Eliason $10,000, to Thomas Mütter Cleeman $5000, and to Thomas Mütter Hoff $5000, as vested legacies under Dr. Mütter's will, payable out of his estate upon the death of the said Mary W. A. Mütter.

2. The court erred in confirming the report of the auditor awarding the balance of the estate, amounting to $85,663.15, to the said Mary W. A. Mütter during her life, and, subject to her life estate therein, awarding the respective sums above mentioned to the respective parties above named; and that over these sums the said Mary W. A. Mütter has no power of testamentary appointment, and that as to the balance of the estate she has only a life estate, with a power of testamentary disposition over the remainder after the life estate.

3. The court erred in confirming the report of the auditor awarding $10,000 to John Armistead Carter, $10,000 to Mrs. Mary L. Eliason, $5000 to Thomas Mütter Cleeman, and $5000 to Thomas Mütter Hoff, as vested in them, but payable to them at the death of the said Mary W. A. Mütter, without regard to the contingency of their surviving the said Mary.

*McCall*, for appellant, argued that, under the will, Mrs. Mütter took the whole estate absolutely; that the whole will taken together indicated this intention in the event of her surviving him, and that the whole will must be taken together in construing: 2 Williams on Executors 927.   The will first gives her all his property of every description.   The bequest to the College of Physicians is subordinate to her enjoyment in case of her surviving him.   When he speaks of his estate being reduced by further losses to less than $90,000, he gives his entire property to his wife *without restriction*, postponing the College of Physicians until after her death; and the interlineation of the words

[Mütter's Estate.]

"*and in fee to will*" all indicate his intention to give her absolute dominion.

Admitting the existence of contradictory clauses in the latter portion of the will, and the general rule under which they are allowed to prevail over the former, it is settled that a prior devise must be disturbed no further than is absolutely necessary for the purpose of giving effect to the posterior qualifying disposition: 1 Jarman on Wills 414.

The bequest here is "for life and in fee"—both incidents of ownership, the mention of which is not inconsistent with absolute ownership: Doe *v.* Thomas, 3 A. & E. 123, 30 E. C. L. R. 48; Pennock's Estate, 4 Harris 268.

*B. Gerhard,* for Thomas Mütter Hoff, appellee.—Although the general intention governs in the construction of wills, it is subject to certain rules.

1. Where there is a bequest of personal property to any one for life, a superadded power of general testamentary disposition will not enlarge it: Doe *v.* Thomas, 3 A. & E., 30 E. C. L. R. 48; German *v.* German, 3 Casey 116.

2. Where several clauses are contradictory, the latter prevail over the former.

The case presents three questions :—

1. Was the bequest to Thomas Mütter Hoff adeemed by the survivorship of Mrs. Mütter ? To her it was a bequest for life, and was not enlarged to a fee by the words "and in fee to will at her death," under the rule above given. Doe *v.* Thornly, 10 East 458, was a case like this, in which this rule was recognised. Nor is there any force in the argument that this was no bequest to Thomas Mütter Hoff, but only a wish that she would bequeath him $5000. Words occurring more than once in a will are presumed to be used always in the same sense: 2 Powell on Devises 8, 9. Elsewhere in this will the words "I wish" clearly express an absolute disposition.

2. Is the legacy of Thomas Mütter Hoff defeated by the fact that the whole estate was worth less than $90,000 ? It does not appear that testator met with further losses, which was the condition on which this provision relative to the College of Physicians depended. It has no bearing whatever on any other legacy.

3. Is the legacy in Thomas Mütter Hoff vested ? That it is so, is evident from the provision of the will examined in the light of the following authorities: Stapleton *v.* Cheales, 1 Eq. Ca. Abr. 295, pl. 1; Hanson *v.* Graham, 6 Vesey 239; Duffield *v.* Duffield, 1 Dow. & C. 311; Jackson *v.* Jackson, 1 Ves. 216; Sydney *v.* Vaughn, 2 Bro. P. C. 254, Toml. ed.; Wadley *v.* North, 3 Ves. 364; Bilger *v.* Mackell, 5 Ves. 509; Lampen *v.*

[*Mütter's Estate.*]

Clowberry, 2 Ch. Ca. 155; In re Bartholomew, 1 Mac & G. 354; Doe *v.* Lea, 3 T. R. 41; Chaffers *v.* Abell, 3 Jurist 577; May *v.* Wood, 3 Bro. C. C. 471.

The opinion of the court was delivered, March 11th 1861, by STRONG, J.—We are of opinion that under the will, Mrs. Mütter takes the whole estate of the testator, subject only to the payment at her death of the legacies to John Armistead Carter, Mrs. Mary L. Eliason, Thomas Mütter Cleeman, and Thomas Mütter Hoff. The paramount purpose, the ruling intention, of the testator evidently was to make the most ample provision for his wife, if she should survive him. `Accordingly, after having given directions for carrying out an agreement which he had made with the " College of Physicians," he bequeathed to her all his property of every description and everything which he possessed, or to which he might have any claim, with the sole exception of the bequest to the " College of Physicians." He next directed that if his proposed arrangement with the college should fail, and if the New York Academy of Medicine should also decline his propositions, the legacy which he had given to them should be paid to his wife, if she should survive him. Then again he gave and bequeathed his entire property, *without restriction*, to his wife, in the contingency that further losses should reduce it to a value less than the sum of ninety thousand dollars, clear of all encumbrance and doubt.

Having thus made arrangements for the distribution of his entire estate, he. next settled another disposition of it, to take effect only in the contingency that he should survive his wife. By this alternative disposition he gave, among other legacies, four to the persons above named, without directing any postponement of the time of enjoyment, and appointed a residuary legatee. He then added, " I wish to state distinctly that the above-named. legacies (referring to all those given, if his wife should die before him) only hold good in case of my surviving my beloved wife, to whom I give the entire use of my estate and property during her life and in fee to will at her death. But I wish the four following legacies to be paid at her death, viz. : ten thousand dollars to John Armistead Carter, or in case of his death to his son Welby; ten thousand dollars to Mrs. Mary L. Eliason, or in case of her death to her daughter Mary, to be settled upon herself; five thousand dollars to Thomas Mütter Cleeman, or in case of his death to be divided between his two sisters; five thousand dollars to Thomas Mütter Hoff, and in case of death, to revert to his mother."

Does then this latter clause cut down to a life interest the absolute and entire estate given to the wife in the former part of the will? If it be utterly inconsistent with the gift of the whole

interest in the property, it must prevail, because it is expressive of the latest intention of the testator. But the will is to be construed as a whole, and one part is not to be treated as repugnant to another, if it be possible for both to stand. Mr. Jarman lays down the rule of construction in these words, 1 Jar. on Wills 415–6 : "But the rule which sacrifices the former of several contradictory clauses, is never applied but on the failure of every attempt to give the whole such a construction, as will render every part of it effective. In the attainment of this object, the local order of the limitations is disregarded, if it be possible by the transposition of them to deduce a consistent disposition from the entire will." Bearing in mind then, that the testator had expressed more than once his will that his wife should have the entire ownership of his property, and that in the strongest possible language, and that the purpose of the last clause seems to have been not so much to designate the extent of his benefactions to his wife as to secure the payment of certain legacies after her death, we adopt no strained construction when we hold that a gift to her "for life and in fee to will" was not intended to take away anything which had been previously given. We cannot construe one part of the will without reference to the other parts. A gift "for life and in fee to will" may mean a gift of the whole, and if it may, then it must in this case; for otherwise the different parts of the will would be repugnant to each other. This conclusion is also fortified by the fact that no disposition is made of what would remain if Mrs. Mütter takes but a life estate. She would then have a power to dispose of the remainder by will. Yet if she should fail to exercise that power, that remainder would fall under the intestate laws. But in addition to the ordinary presumption against an intended intestacy, this will furnishes abundant proof of the testator's purpose to make a complete disposition of all his property. Intestacy was not in any event contemplated. We do not overlook the rule that a power of testamentary appointment, added to a gift expressly for life, does not enlarge the estate given to an entire interest; but the question here is, not whether the estate shall be enlarged, but whether a fee shall be diminished. Nor is the last clause of the will, standing alone, a mere gift of a life interest with a power of testamentary disposition added. The testator gives for life *and in fee* to will. We cannot, by transposition, make these words contradictory of what the testator had before directed, and especially when there is no limitation over. Taking the will as a whole, there is a close resemblance between this case and Doe *v.* Thomas and Lewis, 3 Ad. & El. 123. There lands were devised to a wife, her heirs and assigns, for ever, with the intention that she may enjoy the same for life, and by her will dispose of the same as she thinks proper. It was held that she took a fee.

[Mütter's Estate.]

Upon the whole, therefore, we think that Mrs. Mütter takes under the will of her husband his whole estate subject only to the payment of the legacies to John Armistead Carter, Mrs. Mary L. Eliason, Thomas Mütter Cleeman, and Thomas Mütter Hoff, at her death. We cannot regard the language of the testator respecting those legacies as a mere expression of desire or recommendation addressed to his wife. They are positive directions that the several sums shall be paid at her death. Dr. Mütter had previously given them as legacies, to take effect as such in the event that he should survive his wife, and the manifest intention of the last clause of the will was to preserve them as legacies, even if his wife should outlive him, only postponing the time of enjoyment.

We need only add, it is quite clear they are vested legacies in the legatees living at the death of the testator.

The decree of the Orphans' Court is reversed, and it is ordered, adjudged, and decreed, that the sum of $10,000 be awarded to John Armistead Carter, the sum of $10,000 to Mrs. Mary L. Eliason, the sum of $5000 to Thomas Mütter Cleeman, and the sum of $5000 to Thomas Mütter Hoff, each of said sums to be paid at the death of Mrs. Mary W. A. Mütter, without interest, and that the remainder of the sum for distribution be retained by the said Mrs. Mary W. A. Mütter in her own right, absolutely, and as entire proprietor, and the interest of the four first-mentioned legacies is adjudged to the said Mary W. A. Mütter during her natural life.