## Marietta Hart, Appellant, v. George W. Stoyer.

*Will—Construction—Inconsistent provisions.*

If two clauses in a will are absolutely repugnant the latter must prevail even to the exclusion of the former; but exclusion for repugnance is a principle of construction only to be invoked as a last resort, after all efforts to reconcile and give harmonious meaning to both have failed.

Testator by the first clause of his will gave to his wife "the dwelling house in which we are now living and all there is therein, to have and to hold the same until her death, when it shall go to my two daughters, with the exception of the organ, which shall go to my son Charles." By a subsequent clause he gave forty acres from the east end of his farm to his son

Peter, together with " the adjoining dwelling house in which my son George is now living," and " the remainder, after the forty acres are cut off " to George. The last devise covered the dwelling house given by the first clause. The will also provided that when the widow was no longer able to take care of herself she was to be " kept, cared for, and boarded by George," who was to provide all things needed for the comfort of his mother during her lifetime. *Held*, that the house was the widow's for life, and at her death it went to George in fee, and its contents went to the daughters.

Argued Oct. 2, 1894. Appeal, No. 85, Oct. T., 1894, by plaintiff, from judgment of C. P. Venango Co., Jan. T., 1892, No. 38, entering compulsory nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment. Before TAYLOR, P. J.

At the trial it appeared that both parties claimed under the will of Peter Stoyer.

Peter Stoyer died in 1887, shortly after making his will, leaving a widow and six children, among whom were Marietta, his daughter, named in the first clause quoted, who is the plaintiff, and George Washington, his son, named in the third clause, who is the defendant. Frances died in the same year shortly after her father, and the widow in 1891. After the widow's death defendant took possession of the house and thereafter has refused to permit plaintiff to occupy it with him.

The material portions of Peter Stoyer's will are as follows :

" Item 1. I give, devise and bequeath to my beloved wife, Susannah, the dwelling house in which we are now living and all there is therein, to have and to hold the same until her death, when it shall go to my two daughters, Marietta and Frances, with the exception of the organ, which shall go to my son Charles Irwin. I also give to her two cows and one horse, to have and to hold the same forever. I further give and bequeath to her one fourth of all the grain and fruit raised upon the farm on which I am now living and also a garden, the product of which she is to have ; the said portion of grain and fruit and garden stuff to be held and possessed by her, until she shall no longer be able to take care of herself, and must be kept, cared for and boarded by my son George Washington as hereinafter stated.

"Item 2. I give and bequeath to my son Peter Augustus forty acres from the east end of my farm which is situated in Canal township, Venango county, Pa., and is bounded as follows: On the north side by land of Wm. Smith; on the south by public road; on the east by land of Rhode's sons and on the west by Wm. Smith; the said Peter Augustus to give to his mother, as already mentioned, the one fourth in the bush-el, of all the grain and fruit raised on the above forty acres until the time herein already stated. I further give and bequeath to the said Peter Augustus, the adjoining dwelling house, in which my son, George Washington, is now living; also a flock of sheep, should I possess such at the time of my decease, to have and to hold the same to him, his heirs, executors and administrators and assigns forever, provided he pay to my daughter Marietta five hundred dollars one year after my death.

"Item 3. I give and bequeath to my son, George Washington, the remainder of my farm, herein already described, after the forty acres are cut off; also all machinery, farming utensils, wagons, buggies, etc., etc., that may be here at my decease, to have and to hold the same to him, his heirs, executors and administrators and assigns forever—provided the said Geo. Washington pay to my son Charles Irwin five hundred dollars; to my son William Henry five hundred dollars and to my daughter Frances Christiana two hundred dollars, to be paid to them respectively one year after my death; and be it further provided that the said George Washington give to his mother, one fourth of all the grain and fruit, in the bushel, raised on the above mentioned portion of the farm as long as already herein stated; and that he keep and take care of her cows and horse, and that he take care of and provide all things needed for the comfort of his mother during her life time."

The court entered a compulsory nonsuit and subsequently refused to take it off.

*Error assigned* was refusal to take off nonsuit.

*B. H. Osborne* and *John O. McCalmont*, for appellant.—By the first item in the will a life estate is given to the widow, and the same is devised over to plaintiff and her sister in unmistakable terms.

It would seem that if we must resort to grammar to construe this clause and cannot apply "it" to all the property given to the widow (which would appear to be the correct construction) the pronoun should rather be applied to the house, which is singular, than to the goods which would more correctly be referred to by the plural.

It is not necessary to repudiate either clause in the will, but only to discover what testator meant by the whole instrument: Sheetz's Ap., 82 Pa. 213 ; Newbold v. Boone, 52 Pa. 167.

In construing this will in accordance with appellee's theory, the first clause devising the house to the widow, and over, must be entirely ignored ; while, following the rule in the cases cited, entire effect may be given to the first clause and still appellee be permitted to take the farm under the third clause, although without a house : Jones's Ap., 3 Grant, Pa. 169; Finney's Ap., 113 Pa. 11; McFarland's Ap., 37 Pa. 300; Wilson v. McCeehan, 53 Pa. 79.

That by the devise of a house all that comes within the curtilage passes, was not disputed in the court below. However, lest such question be raised here, we cite : Rogers v. Smith, 4 Pa. 93.

*Geo. S. Criswell,* for appellee.—All the surrounding circumstances of the testator, his family, the amount and character of his property, may and ought to be taken into consideration in giving a construction to provisions of a will : Postlethwaite's Ap., 68 Pa. 489; Markley's Est., 132 Pa. 354.

The cardinal rule of construction is that the testator's intent is to be gathered from the four corners of the will taken as a whole : Thompson's Ap., 89 Pa. 36 ; Kopenhaffer's Ap., 87 Pa. 196 ; Miller's Ap., 113 Pa. 459; Baker's Ap., 115 Pa. 590 ; Blackmore v. Hickman, 81* Pa. 288; Ferry's Ap., 102 Pa. 207 ; Middleswarth v. Blackmore, 74 Pa. 414; 2 Bl. Com. p. 379.

Appellant's contention violates a familiar and long established rule of construction, and it was upon this point that the court below correctly ruled the case in favor of defendant. In item 2 of the will the whole farm is described and forty acres from the east end of it is devised to Peter Augustus. By item 3, " the remainder of my farm herein already described

after the forty acres are cut off," is devised to George W.  This latter devise includes the premises in controversy and is totally repugnant to the claim made by the plaintiff under item 1. The latter must, therefore, prevail: 2 Bl. Com. 380 ; 2 Jarman on Wills, p. 48 : O'Hara on Wills, 39.

OPINION BY MR. JUSTICE MITCHELL, Nov. 5, 1894 :

The language of the will in items one and three taken literally is inconsistent, as the first gives the dwelling house expressly to the widow for life, followed by the gift to the daughters, whatever may be its extent, while the other gives it by description, necessarily inclusive, to his son George.  But it is manifest that no such inconsistency was in the mind of the testator, and hence we must seek his intent by an examination of the whole will.   It is true that if two clauses in a will are absolutely repugnant the latter must prevail even to the total exclusion of the first.   But exclusion for repugnance is a principle of construction only to be invoked, as a last resort, after all efforts to reconcile and give harmonious meaning to both have failed.

Taking the whole will of Peter Stoyer together, it is clear that his first purpose was to make provision for his wife by giving her the house in which they had been living, and everything therein, for her life, with a horse, cows, and a share of the grain, fruit and garden stuff for her support.   After this first purpose it is reasonably certain that his general intent was to divide his farm between his sons Peter and George, charging the portions in their hands with specified sums in favor of his other children.   In carrying out this scheme he gives forty acres from the east end of the farm to Peter together with " the adjoining dwelling house in which my son George Washington is now living " and " the remainder . . . . after the forty acres are cut off " to George.   This last devise covers the dwelling house - previously given by the first item, in these words, " to my beloved wife the dwelling house in which we are now living, and all there is therein, to have and to hold the same until her death, when it shall go to my two daughters, Marietta and Frances, with the exception of the organ, which shall go to my son Charles."   So far as the gift to the widow is concerned there would be little difficulty in reconciling the two devises

by construing the later one to be the remainder in fee after the life estate previously given the widow.    But what did the testator mean by "it" which is to go to the daughters on the mother's death?    Grammatically " it " would seem to refer to the house, but the testator certainly did not mean the house alone, for he excepts the organ, which can only go as part of the contents. If he meant the house and its contents, then "it" was an incorrect word to express his meaning.    Did he intend to include the house at all?    "It" is not a correct word to describe the contents of the house, but it is no worse for that purpose than to describe both house and contents.    The grammar is faulty whichever meaning we give it.    Returning to the general intent we observe that there were two houses on the farm, one in which testator lived and the other in which George lived. Both were upon the part devised to George, but the one in which he was living is specifically given to Peter.    If the other is given to the daughters after the mother's death, then George is left in the position of having no house though he is given a farm which has two houses upon it.    But the objection to this view does not rest solely on the improbability of such a division of the estate.    By item one the widow is expressly to have the dwelling house for life and a share of the crops etc., " until she shall no longer be able to take care of herself and must be kept, cared for, and boarded by my son George as hereinafter stated," and by item three George is to give his mother her share of the crops " as long as already stated, and keep and take care of her cows and horse, and take care of and provide all things needed for the comfort of his mother during her life time." Where is he to keep, care for and board his mother, except in the house which she is to have for her life but which is on his farm and is included in the devise to him by item three ?

There is no construction of this will which is entirely free from objection.    The one which would make the word " it " in item first refer correctly to the house alone, is rendered impossible by the next clause which by express mention of the organ shows conclusively that the testator did not mean the house alone ; the next which refers " it " to both house and contents, is opposed to the clear general intent to divide the farm between Peter and George, and makes no better grammar than the third which refers " it " to the contents of the house only,

and is supported by the general intent and also by the specific provisions in regard to the widow and George's care of her. We are of opinion that this last presents the least difficulty, and must be adopted. The house was the widow's for life, and at her death it went to George in fee, while its contents went to the daughters.

Judgment affirmed.