## Morris et al. v. Morris et al.

O. R. Hughes, for petitioners.

J. Ernest Isherwood, for Hal B. Church and Russell Roberts, guardian.

SAYERS, P. J., Jan. 20, 1930.—This is a proceeding under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, brought by Franklin Morris and Guy Morris, devisees and executors of the last will and testament of William H. Morris, deceased, to determine what interest, estate or title William H. Morris acquired under the last will and testament of Jacob Morris, his deceased father, in and to a certain house and lot of ground in Franklin Township, Greene County, Pennsylvania. All parties interested in said real estate, and in the construction of the wills of William H. Morris and Jacob Morris, and in this adjudication, to determine their rights, status and legal relations with reference thereto, have been made parties to this proceeding.

This proceeding to have a declaration of rights, status and other legal relations of the parties interested, all of whom are subject to the jurisdiction of

the court as the record now stands, seems to be proper, and the remedy sought under this act is probably the most convenient and satisfactory one that exists at present for determining the matter in controversy. An action of ejectment might be a proper and convenient remedy, but, in the end, it would turn upon the construction of the paper writings or the two wills to be construed by the court under the submission in this case.

The court is of the opinion that the Uniform Declaratory Judgments Act can be made of real use in this case, and is satisfied that it has jurisdiction, and that an actual controversy exists between the parties, all of whom are *sui juris* or represented by a proper guardian, and before the court, and that the declaration sought will be a practical help in ending the controversy: Käriher's Petition, 284 Pa. 455, 471.

There are some facts which do not clearly appear by the petition and answer, but generally the pertinent facts necessary to a proper adjudication of this case appear by the petition and answer, and there is no request and apparently no necessity for trying any issues of fact by a jury.

The only answer filed in this case is that of Hal B. Church, husband, and Russell Roberts, guardian *ad litem* of Jack Church and Sarah Jean Church, minor children of Nellie Morris Church, deceased, a daughter of William H. Morris, who was a son and devisee of Jacob Morris. This answer denies that William H. Morris had any more than a conditional or defeasible life estate in the house and lot devised to him by his father, Jacob Morris, and avers that when he, William H. Morris, ceased to occupy the property as directed by the will of Jacob Morris, he had no interest or estate in said house and lot thereafter, and that it then passed by the will of Jacob Morris to the children, grandchildren and heirs of William H. Morris in fee, and not to the devisees under his will, the petitioners herein.

The seventh paragraph of the will of Jacob Morris reads as follows:

"I will to my Son William H. Morris all of Certain House and lot of Ground Situated in Franklin township Greene County Pennsylvania adjoining lands of Jesse Orndoff and John Buchanan to have and to hold the Said House and lot of Ground So longe as occupied by him When my son William H. Morris Shall no longer ocupy the above described Property it Shal then belong to his Heirs."

No other provision of the will could affect the construction of the above devise to William H. Morris except paragraph 3, which reads as follows:

"I Will that all my real and personal property Shall by my Executors be Sold."

William H. Morris personally occupied the house and lot in controversy as soon as his father's will was probated. About Feb. 1, 1928, he ceased to occupy the house and left the premises and went to live with Franklin Morris, one of the petitioners and devisees. Thereafter, William H. Morris rented the house and lot in controversy and exercised full and complete control and authority over the property from the time he ceased to occupy the house, Feb. 1, 1928, until he made his will of Jan. 14, 1928, devising said house and lot in fee to his sons, Franklin Morris and Guy Morris, as follows:

"1. In consideration of their taking care of me, I give, devise and bequeath to my two sons, namely Franklin Morris and Guy Morris to each the undivided one-half (½) thereof, all that certain house and lot of ground situate in Franklin Township, Greene County, Pennsylvania, on Ten Mile Creek, adjoining lands of Mollie B. Walton, E. E. Morris, Throckmorton Church Lot, and John Headley, containing 2 acres and 130 perches, to them, their heirs and assigns, in fee simple."

He continued in possession of the premises after the making of his will and until the time of his death on Aug. 26, 1928, but he did not personally occupy or live in the house on the lot in controversy after he left the premises in February, 1928.

The second clause in the will of Jacob Morris, deceased, to wit, "I Will that all my real and personal property Shall by my Executors be Sold," is absolutely repugnant to the later clause in the will devising the house and lot to William H. Morris so long as occupied by him. The rule that the latter of repugnant clauses in a will must prevail is so well established that authorities scarcely need be cited. "If two clauses in a will are absolutely repugnant, the latter must prevail even to the total exclusion of the first. But exclusion for repugnance is a principle of construction only to be invoked as a last resort after all efforts to reconcile and give harmonious meaning to both have failed:" Hart v. Stoyer, 164 Pa. 523, 527; Mütter's Estate, 38 Pa. 314.

The rule that the latter of incompatible clauses in a will must prevail is undoubted, but it is invoked only as a last resort where there is utter repugnancy: Simpson's Estate, 245 Pa. 244, 252; Patton's Estate, 268 Pa. 367, 369; Mayer's Estate, 289 Pa. 407, 410. "Where there are two clauses in a will which are so inconsistent with each other that it is impossible to give effect to both, the first must give way to the last:" Stickle's Appeal, 29 Pa. 234, 236.

The petitioners in this case contend that where the devise is to a man and his heirs, there is and can be no intervening estate intended; and as the man has no heirs until his death, the first taker has a life or freehold estate. And that any limitation or condition as to occupancy could have no greater force than an expressed restriction or restraint as to alienation, citing the opinion of the court below, affirmed, per curiam, by the Supreme Court in Leonard v. Leister, 233 Pa. 475, 477. Petitioners claim that to occupy or not to occupy is one of the inherent attributes in a fee simple estate. The owner of the fee cannot be restricted in his right to use, occupy, alien or encumber as he thinks proper, and they claim that "where it is apparent from the words of a will that the dominant purpose of the testator is to devise a fee simple estate and the subsequent language indicates merely a subordinate intent to strip the estate thus given of one or more of its inherent attributes, the law will hold that this cannot be done; and the fee simple estate passes to the devisee with all its inherent qualities:" Pattin v. Scott, 270 Pa. 49; Walker v. Vincent, 19 Pa. 369, 371; Breinig v. Smith, 267 Pa. 207; Billmyer et al. v. Billmyer, 296 Pa. 31.

It is further claimed that the word "heirs" must be read in this will as a word of limitation (Martin et al. v. Grinage, 289 Pa. 473), and that the word "heirs" following the devise of a life estate in this case is a word of limitation and consequently that the intention of the testator is that the first devisee, even though named as a life tenant, takes as a source of inheritable succession: Lyman v. Lyman et al., 293 Pa. 490; Glenn v. Stewart, 265 Pa. 208.

Quoting from the opinion of Mr. Justice Walling in the latter case, the petitioners say: "The contention that the estate in James A. Glenn is reduced to one for life by the fact that the restriction upon alienation continues during his natural lifetime is not tenable. That simply attempts to reduce his power over the property, not his interest therein; while to cut down a fee previously given to an estate for life requires clear and unequivocal language. See Hoopes's Estate, 231 Pa. 232; Kreb's Estate, 184 Pa. 222; McIntyre v. McIntyre, 123 Pa. 329."

Based upon this line of reasoning, the petitioners contend that William H. Morris took a freehold estate for life which was limited immediately to him and his heirs, and, consequently, under the rule in Shelley's Case, he took a fee simple estate in the property in dispute which he had a right to devise and did devise in fee to the petitioners.

Where a will shows it was written by the testator himself, the language employed in particular instances, when not clear, should be given the meaning of testator, so far as this can be gathered from the writing as a whole, rather than a fixed technical meaning where the latter conflicts with the former: Smith's Petition, 291 Pa. 129.

It will be observed that the testator, Jacob Morris, did not in the first instance devise a fee simple to his son, William H. Morris, which was cut down by any subsequent words of limitation, but that he did will to him the premises in dispute "to have and to hold the Said House and lot of Ground So longe as occupied by him." This, as the court understands it, creates a conditional life estate which is defeated when the devisee fails personally to occupy the premises. The testator, however, went further in order to make his meaning more clear and said: "When my son William H. Morris Shall no longer ocupy the above described Property it Shal then belong to his Heirs." If the testator had said at the end of this clause "it shall then belong to the persons who would be his heirs if he had died at that time," there would have been no doubt as to the nature of the estate he intended William H. Morris to have.

The court has been unable to find any construction of a clause in a will similar to the one used by the testator in this case, but has found two Massachusetts decisions which hold that estates during occupancy are life estates.

Testator devised his widow an estate for life with a devise over to his daughter, Mary A. Bridges, should she survive her parents, "of the use and improvement of all my real estate and what household goods may remain, so long as she chooses personally to occupy and improve the same; on condition of her keeping the building in repair and paying the taxes and cost of insurance." The court held "the interest given to his daughter Mary therein, though subject to be terminated by her ceasing to occupy, was a life estate:" Wilmarth v. Bridges, 113 Mass. 407, 410.

In Plympton v. Boston Dispensary, 106 Mass. 544, 548, where the devise to the widow was on conditions somewhat similar to those described in Wilmarth v. Bridges, the court held "Mrs. Dearborn [the widow] is not obliged to occupy the estate on Avon Place, but may do so at her discretion" on payment of certain rents, etc., and also held "so long as she occupies the house on Avon Place, she is tenant for life (Co. Lit. 42 a), and as such must pay the ordinary taxes on the house."

The estate, however, granted to William H. Morris, while it was potentially a life estate if he had seen fit to comply with the directions of the testator as to occupancy of the house, was a life estate subject to a condition which happened in the instant case and which defeated and ended all estate or interest that William H. Morris thereafter could have in the land. The trouble with this case is that the estate granted to William H. Morris in the first instance is not a freehold, but a conditional right of occupancy, an estate at will which ended when the devisee determined no longer to occupy the property.

Judge Endlich, in Schaeffer v. Messersmith, 10 Pa. C. C. Reps. 366, 369, after concluding that there was no distinction between a limitation and a condition in relation to a devise to a widow which became void upon her remarriage, says:

"Looking now at the effect upon the nature of the estate granted, it is manifest that the annexing of a condition to a devise cannot affect its nature as a devise of a fee or of less than a fee. Whatever the estate given, a breach of the condition annexed will confer a right of entry whereby the estate will be terminated. A provision operating by way of limitation, on the other hand, must necessarily reduce the estate to something less than a fee by fixing a period when it will terminate. Thus, a provision in restraint of marriage, operating by way of limitation, would end the interest devised, at the latest, at the widow's death, but sooner in case of her remarriage. She would, therefore, take a life estate, because her interest might possibly last for life, while yet remaining liable to be determined sooner on the happening of the contingency of her remarriage: Rodgers v. Rodgers, 7 Watts, 15; Cooper v. Pogue, supra. A similar provision operating by way of condition would indicate nothing as to the estate granted, but simply make it, whatever it might be, determinable by entry upon remarriage."

While we are well aware of the rule which generally requires the word "heirs" to be construed as a word of limitation, we feel, in order to carry out the testator's intention, that he meant by the words "it shall then belong to his heirs," that the persons to whom the estate was devised, subject to the occupancy of William H. Morris, were the persons who would, if he were dead at that time, take as his heirs generally upon his failure to comply with the condition as to occupancy. The word "heirs" in this case was merely descriptive of the persons who were to take on failure of William H. Morris to occupy the house and lot and not a word of limitation of an estate previously granted in fee or in tail.

The court is, therefore, of the opinion that William H. Morris had but a conditional defeasible life estate in the disputed premises which failed when he ceased to occupy the house and lot of ground, and that he had no estate in the said house and lot which could be devised or transmitted by his will to the petitioners in this case, and that the premises in dispute and the right to immediate possession thereof belong to the persons who would have been the heirs of William H. Morris if he had died at the time of the breach of the condition which defeated his estate or interest in the lands in controversy.

At the time of the breach of the condition and failure to occupy the house and lot by William H. Morris, to wit, on Feb. 1, 1928, the persons who would be designated as his heirs if he had then died were Franklin Morris, a son; Guy Morris, a son; Nellie Morris Church, a daughter intermarried with Hal B. Church; Florence E. Morris, widow, and Fred A. Morris and Frank Edward Morris, sons of Milton H. Morris, deceased, who was a son of the said William H. Morris. Since that date, Nellie Morris Church has died testate, leaving to survive her her husband, Hal B. Church, and two children, Jack Church, a son, and Sarah Jean Church, a daughter, who have for their guardian ad litem Russell Roberts.

### Adjudication.

And now, Jan. 20, 1930, the court finds as follows:

1. That William H. Morris, devisee of Jacob Morris, took no greater estate under the will of Jacob Morris than a conditional life estate, which was defeated by his failure to occupy the house and lot or property in dispute after Feb. 1, 1928.

2. That upon the breach of condition, namely, the failure of William H. Morris to occupy the house and lot or property in dispute after Feb. 1, 1928,

it became the property and estate of those persons who would have taken as the heirs of William H. Morris if he had died intestate at that time.

3. That the persons who became the owners of the real estate with right of entry after Feb. 1, 1928, and who were thereupon entitled to possession of the premises, were Franklin Morris, who was entitled to the undivided one-fourth of the said property in fee; Guy Morris, who was entitled to the undivided one-fourth of the said property in fee; the devisees of Nellie Morris Church, who was entitled in her lifetime to the undivided one-fourth of the said premises; and Florence E. Morris, widow, and Fred A. Morris and Frank Edward Morris, sons of Milton H. Morris, deceased, who was entitled to one-fourth of the said property.

4. That William H. Morris had no estate in the land which he could transmit either by deed or will, and such estate as he had terminated when he failed to occupy the said house and lot of ground as directed in the paragraph of the will of Jacob Morris, in dispute in this case.

5. The costs in this case should be paid by the petitioners and the respondents herein, by each in proportion to the estate or interest which they have in the disputed premises.

Ordered, adjudged and decreed accordingly.

From S. M. Williamson. Waynesburg, Pa.